### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BENCHMARK TRADING, LTD.,** | : | |
| **BEERS APARTMENTS, LLC, BIRDSEYE** | : | |
| **DEVELOPMENT COMPANY, BRIDGEPORT** | : | |
| **COMMONS, LLC, DORAL** | : | |
| **APARTMENTS, LLC, EXECUTIVE HOUSE** | : | |
| **APARTMENTS, GRANFIELD APARTMENTS,** | : | |
| **LLC, JJAMS APARTMENTS, LLC, NORTH** | : | |
| **PARK APARTMENTS, LLC, PRESIDENTAL** | : | |
| **APARTMENTS, ROSE GARDEN** | : | |
| **APARTMENTS, LLC, STEPHENS TERRACE** | : | |
| **APARTMENTS, LLC, AND WAYNE STREET** | : | |
| **APARTMENTS, LLC** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **V.** | : | |
| | : | **COMPLAINT** |
| **NED LAMONT** | : | |
| | : | |
| **Defendant** | : | **JULY 29, 2020** |

### <u>COMPLAINT</u>

The plaintiffs, BENCHMARK TRADING, LTD., BEERS APARTMENTS, LLC,

BIRDSEYE DEVELOPMENT COMPANY, BRIDGEPORT COMMONS, LLC, DORAL

APARTMENTS, LLC, EXECUTIVE HOUSE APARTMENTS, GRANFIELD

APARTMENTS, LLC, JJAMS APARTMENTS, LLC, NORTH PARK APARTMENTS,

LLC, PRESIDENTIAL APARTMENTS, ROSE GARDEN APARTMENTS, LLC,

STEPHENS TERRACE APARTMENTS, LLC, AND WAYNE STREET APARTMENTS

(referred to hereinafter collectively as "Plaintiffs"), through their undersigned counsel,

bring this Complaint for injunctive relief, declaratory relief, and damages against the

defendant, Ned Lamont, Governor of the State of Connecticut.

## I.      INTRODUCTION

1.      The Plaintiffs are the owners real properties in the State of Connecticut, which properties contain apartments for rent to residential tenants.

2.      The Plaintiff are in the business of owning and managing said Properties, either directly or through property managers.

3.      As of March 19, 2020, the Plaintiffs had contractual relationships (i.e., leases) with tenants, which contractual relationships were subject to rights and benefits pursuant to the Connecticut General Statutes.

4.      The Plaintiffs have lease arrangements with tenants originating from Connecticut, out-of- state, and foreign countries.

5.      On March 19, 2020, the Defendant issued Executive Order 7G, which illegally and unlawfully precluded the Plaintiffs from enforcing their rights as landlords pursuant to the Connecticut General Statutes through the Superior Court for the State of Connecticut, Housing Session.

6.      On April 10, 2020, the Defendant issued Executive Order 7X which *inter alia* prohibited the Plaintiffs as landlords form issuing notices to quit and serving complaints against tenants in breach of their leases or contractual arrangements, which Executive Order illegally and unlawfully restricted the Plaintiffs from asserting their rights as landlords and property owners and which effectuated a taking of security deposits being held pursuant to both contract and Connecticut Statute.

7.      The Plaintiffs herein allege that the Defendant's conduct was undertaken under color of law to deprive them of their constitutional rights to private contract, due

process, equal protection under the law, and against the taking of their property for a public use without just compensation.

8.    In addition, the foregoing Executive Orders effectuated an unconstitutional restraint on interstate commerce.

9.    On June 29, 2020, the Defendant issued Executive Order 7DDD, extending the terms of Executive Order 7X.

10.    The Defendant's Executive Order 7X, and by extension Executive Order 7DDD, are by their terms beyond the scope of the Defendant's authority as governor such that all actions thereunder are *Ultra Vires*.

## II.    **JURISDICTION AND VENUE**

11.    This Court has jurisdiction over all claims for relief set forth herein pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C.  §§ 1983 and 1988 as this complaint seeks redress for deprivation under color of law of rights guaranteed by the United States Constitution.

12.    This Honorable Court also has supplemental jurisdiction to any state law claims that are alleged or can be construed from the Complaint pursuant to 28 U.S.C. § 1367(a).

13.    Venue is proper pursuant to 28 U.S.C. § 1391 because all acts giving rise to the Plaintiffs' claims occurred in the district in which this Court sits.

## III.    **PARTIES**

14.    The Plaintiff BENCHMARK TRADING, LTD., owns multiple properties located in Bridgeport, Connecticut, and has written leases with tenants.

15.    The Plaintiff BEERS APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

16.    The Plaintiff BIRDSEYE DEVELOPMENT COMPANY, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

17.    The Plaintiff BRIDGEPORT COMMONS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

18.    The Plaintiff DORAL APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

19.    The Plaintiff EXECUTIVE HOUSE APARTMENTS, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

20.    The Plaintiff GRANFIELD APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

21.    The Plaintiff JJAMS APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

22.    The Plaintiff NORTH PARK APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

23.    The Plaintiff PRESIDENTIAL APARTMENTS, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

24.    The Plaintiff ROSE GARDEN APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, has written leases with tenants.

25.    The Plaintiff STEPHENS TERRACE APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has written leases with tenants.

4

26.     The Plaintiff WAYNE STREET APARTMENTS, LLC, owns property located in Bridgeport, Connecticut, and has a written leases with tenants.

### III.     FACTS AND CAUSES OF ACTION

27.     Property owners in Connecticut are permitted to residential lease premises to tenants with or without a written lease, with tenancies typically being for a specific term but sometimes month-to-month; and whether by written lease oral agreement, tenancies are created by contractual agreements between landlords and tenants.

28.     In Connecticut, the primary fights and responsibilities of landlords and tenants are set forth in Connecticut General Statutes §§ 47a-1 through 47a-20f.

29.     In Connecticut, the amount of rent and obligation to pay is set forth by either written agreement (i.e., the lease) or oral agreement.

30.     The tenant's failure to pay rent entitles the landlord to terminate the tenancy and reacquire possession of the property.

31.     In order to reacquire possession, the landlord must serve a Notice to Quit Possession ("Notice to Quit") on the tenant pursuant to Conn. Gen. Stats. § 47a-15a followed by the service of a summary process complaint pursuant to Conn. Gen. Stats. § 47a-23, *et. seq.*

32.     The landlord is required to follow the statutory eviction process to dispossess the tenant, and the failure to do so can subject the landlord's eviction action to dismissal and the landlord to statutory penalties pursuant to Conn. Gen. Stats. § 47a-43.

33.    On March 10, 2020, in response to the outbreak of the Coronavirus (aka COVID19), the Defendant declared Public Health and Civil Preparedness Emergencies. (Exhibit A.)

34.    On March 19, 2020, Defendant Lamont issued Executive Order 7 G, which *inter alia* contained a "Suspension of Non-Critical Court Operation and Associated Requirements" expressly ordering:

> Notwithstanding any provision of the Connecticut General Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:

> a.    All time limitations in Chapters 959, 959a, 960 and 961 of the General Statutes including, but not limited to, C.G.S. S 54-1g concerning the time of arraignments;

> b.    and Conn. Gen. Stats. § 54-82m concerning the right to a speedy trial;

> c.    All time limitations for rendering judgments in civil actions provided in Conn. Gen. Stats. § 51-183b;

> d.    All time limitations concerning civil process, service and return  provided in Chapter 896 of the General Statutes;

> e.    fill statutes of limitations provided in Chapter 926 of the General Statutes;

> f.    All time limitations concerning the automatic review of terms of probation provided in Conn. Gen. Stats. § 53a-29(g);

> g.    All time constraints for the filing of administrative appeals provided in Conn. Gen. Stats. § 4-183;

> h.    All time limitations concerning hearings and rulings pertaining to primary and election disputes provided in Chapter 149 of the General Statutes;

i.     All time limitations in Title 46b of the General Statutes including, but not limited to, family, juvenile and child support matters;

j.     All venue and filing requirements including, but not limited to, Conn. Gen. Stats. §§ 51-345, 51-348, 51-352 and 51-353, provided in Chapter 890 of the General Statutes;

k.     The times and places for the sitting of the Superior Court provided in Conn. Gen. Stats. § 51481;

l.     The notice of sessions provided in Conn. Gen. Stats. § 51-182. (Exhibit B.)

35.    On April 10, 2020, the Defendant issued Executive Order 7X which, among other things contained "Protections for Residential Renters Impacted by COVID-19," expressly ordering:

Effective immediately and for the duration of the public health and civil preparedness emergency declared on March 10, 2020, including any period of extension or renewal:

a.     No Notice to Quit or Service of Summary Process Before July 1. Section 47 a-23 of the Connecticut General Statutes is modified to additionally provide, "(f) No landlord of a dwelling unit, and no such landlord's legal representative, attorney-at-law, or attorney-in-fact, shall, before July 1, 2020, deliver or cause to be delivered a notice to quit or serve or return a summary process action, for any reason set forth in this chapter or in sections 21-8() et seq. of the Connecticut General Statutes, except for serious nuisance as defined in section 47a-15 of the Connecticut General Statutes.

b.     Automatic 60-Day Grace Period for April Rent. Section 47a-15a of the Connecticut General Statutes is modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in April 2020 is unpaid when due and paid within sixty days thereafter, the tenant of a dwelling unit shall not be in default Of violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant. As used in this section, 'tenant' includes a resident of a mobile manufactured home park, as defined in section 21-64, including a resident who owns his own home, and 'landlord' includes a 'licensee' and an 'owner' of a mobile manufactured home park, as defined in section 21-64."

c.   <u>60-Day Grace Period for May Rental Upon Request</u>. Section 47a- 15a of the Connecticut General Statutes is further modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in May 2020 is unpaid when due and paid within sixty days thereafter by a tenant who, on or before the 9th day after such rent is due, notifies the landlord or landlord's representative in writing, including but not limited to in written electronic communication, that the tenant needs to delay all or some payment of rent because he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, the tenant of a dwelling unit shall not be in default or violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of such rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant."

d.   <u>Application of Additional Security Deposit to Rent, Upon Request</u>. Section 47a-21 is modified to additionally provide, "(m) Upon the written request of a tenant of a dwelling unit who is not enrolled in the security deposit guarantee program established by the Commissioner of Housing pursuant to Section 8-339 of the Connecticut General Statutes, who has paid a security deposit in an amount that exceeds one month's rent, and who provides written notice, including but not limited to in written electronic communication, that he or she has become fully or partially unemployed Of otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, a landlord of such unit shall withdraw an amount of said deposit equal to the amount in excess of one month's rent from an escrow account and apply it toward the rent due in April, May, Of June 2020. Notwithstanding subsection (h) of this section, an escrow agent may withdraw funds from an escrow account to comply with such a request. The amount withdrawn by the escrow agent and applied toward the rent due shall no longer be considered an amount of the security deposit for any purpose, including but not limited to the calculation of interest, assignment to successor, and the payment of security deposit and interest at the termination of a tenancy. Notwithstanding subsection (b) of this section, no landlord who has complied with such a request may demand the security deposit be restored to an amount that exceeds one month's rent earlier than the later of the end of the public health and civil preparedness emergency declared on March 10, 2020, including any period of extension Of renewal of such emergency, Of the date the rental agreement is extended Of renewed.

Except as expressly provided herein, nothing in this order shall relieve a tenant of liability for unpaid rent or of the obligation to comply with other terms of a rental agreement or statutory obligations pursuant to Connecticut law. Except as expressly provided herein, nothing in this order shall relieve

8

a landlord of the obligation to comply with a rental agreement or statutory obligations pursuant to Connecticut law."

(Exhibit C.)

36.     The Plaintiffs herein are landlords of residential properties for which they did not receive rent for months prior to the issuance of Executive Order 7X and/or have not received rents for April and thereafter on account of said Executive Order.

37.     Many tenants of Plaintiffs ceased making payments in April 2020, and have specifically cited the foregoing Executive Orders as authorization for withholding payment.

38.     Many tenants have cease paying altogether because the cumulative effect of the Defendant's Executive Orders is to prohibit the commencement of any eviction proceedings with the exception of evictions for "Serious Nuisance" as defined by Conn. Gen. Stats. § 47a-15.

39.     Plaintiffs received and held security deposits from tenants who are not enrolled in a security deposit guarantee program pursuant to CGS 8-339, who have asked these Plaintiffs in writing to apply part of the security deposit held by these Plaintiffs to the May and/or June 2020 rent, pursuant to Executive Order 7X.  Accordingly, Plaintiffs were forced to relinquish a portion of their legally retained security deposit with respect to those tenants.

40.     The Plaintiff BENCHMARK TRADING, LTD. uses a third-party from New York to insure the rental payments on many of its leases with its tenants, and its agreement with said third-party insurer requires that BENCHMARK TRADING, LTD obtain and maintained two full months' worth of security deposit for each tenant.

9

41.    The Defendant's Executive Orders have effectively voided that interstate insurance policy while providing no benefit to landlords or tenants, have provided no state benefit, and have offered no nexus between the security deposit reduction and/or depletion and any supposed public health risks.

42.    These Plaintiffs have been harmed  by the Defendant's actions in one of more of the following ways:

a.    They served their tenant(s) with a Notice to Quit for failing to pay rent but were prohibited from thereafter serving the tenant(s) with a summary process complaint to initiate evictions proceedings in the Superior Court Housing Session, and said tenant(s) are still in possession of the dwelling units.

b.    Their tenant(s) failed to make payments for April and thereafter, and they are prohibited by the Defendant's Executive Orders from issuing Notices to Quit, and said tenant(s) are still in possession of the dwelling units.

c.    Their tenant(s) failed to make payments before April, and they served Notices to Quit but were prohibited from thereafter serving the tenant(s) with a summary process complaint to initiate evictions proceedings in the Superior Court Housing Session, and said tenant(s) are still in possession of the dwelling units.

d.    Their tenant(s) failed to make payments for March and thereafter, and they are prohibited by the Defendant's Executive Orders from issuing Notices to Quit, and said tenant(s) are still in possession of the dwelling units.

e.    Their tenant(s) are in breach of various contractual obligations under the lease(s) and the Plaintiffs are prohibited from commencing evictions by the service of Notices to Quit and complaints thereafter.

f.    They obtained judgments against tenant(s) prior to the Defendant's Executive Orders, but are prohibited from executing judgments, some or all of which may grow or may be "stale" for not being served and returned to the Superior Court Housing Session within six months of judgment or breach of stipulation as required under the Connecticut General Statutes.

g.    Inasmuch as the Defendant's Executive Orders inter alia designate security deposits being held as rental payment, the Plaintiffs have been deprived of security deposits which under the Connecticut General Statute are

designated to compensate Landlords for damage done to the premises or arising out of tenants' breach of lease or tenancy agreement.

h.      Because of Executive Order 7X, Plaintiffs have been prohibited from causing tenants to be served notices to quit and eviction complaints, and consequently are being deprived of the value of their properties.

i.      These prohibitions have been extended by Executive Order 7DDD. (Exhibit D.)

43.     Upon information and belief, while the Defendant has used the cover of a public emergency to close off all avenues for the Plaintiffs to proceed with the statutory process of regaining possession of their residential rental property, he has not treated similarly situated landlords of commercial rental property in the same fashion.

44.     The Defendant has done so without any constitutional or statutory authority and has no legitimate government interest for permitting the commercial eviction process while totally halting the residential eviction process.

45.     The actions and orders of the Defendant, who is and has been at all relevant times acting under color of state law, are therefore denying the Plaintiffs their right to own and possess residential real property as they see fit, and as legally authorized by U.S. Constitution and Connecticut statute.

46.     The Defendant has abused the position of his office by using the COVID-19 pandemic to illegally expand his power by unprecedented lengths, without any proper Constitutional, statutory, or common law basis therefor.

47.     In abusing his position in this way, the Defendant has interfered with the Plaintiffs' private right to enter contracts and has interfered with existing contracts between the Plaintiffs and their tenants.

11

48.     In abusing his position in this way, the Defendant has at all relevant times acted *ultra vires* actions undertaken under color of law.

## COUNT 1 - DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE EQUAL PROTECTION OF THE LAWS 42 U.S.C. 1983

50.     Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

51.     Article IV, Section 2 of the United States Constitution states in relevant part: "Nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

52.     The Fourteenth Amendment to the United States Constitution provides in relevant part: "No state shall make or enforce any law which shall deny to any person within its jurisdiction the equal protection of the laws."

53.     Connecticut law allows those who follow the legal process established by state statute to own and let real property, with the legal ability to repossess such property from the tenant upon the tenant's failure to abide by the statutory and/or lease terms of the tenant's tenancy, including the timely payment of rent.

54.     The Defendant has, under color of law but without legal authority, infringed on and interfered with the Plaintiffs' rights under the United States Constitution, Connecticut statutes, and the common law, while leaving the rights of landlords of commercial properties undisturbed.

55.     The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

56.    The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their constitutional rights.

57.    Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 2 - DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE RIGHT TO PRIVATE CONTRACT 42 U.S.C. 1983

58.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

59.    By his conduct, the Defendant has engaged in behavior which violates Article 1, Section 10 of the United States Constitution, known as the "Contracts Clause."

60.    Executive Order 7X purportedly has the effect of law, though unilateral and issued only by Defendant.

61.    The portions of Executive Order 7X challenged here illegally interfere with the Plaintiffs' rights and abilities to fulfill their obligations under, and reap the benefits of, leases and agreements entered into prior to the Executive Order.

62.    The portions of Executive Order 7X challenged here do not serve a legitimate public purpose sufficient to justify the infringement of the Plaintiffs' constitutional rights.

63.    Even if the Defendant could put forth a legitimate public purpose for negating and amending the rights, terms, obligations, benefits and expectations under private contracts, the extreme measures the Defendant employed are unreasonable, unnecessary and not legally justifiable.

64.    The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

65.    The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

66.    Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 3 - DEPRIVATION OF CIVIL RIGHTS VIOLATIONS OF THE RIGHT TO DUE PROCESS 42 U.S.C. SEC 1983

67.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

68.    The Defendant's Executive Order affords the Plaintiffs no legal or administrative process to contest its application to them, or to vindicate their rights injured thereby.

69.    The Defendant's Executive Order has illegally caused the Plaintiffs to lose money, rights and property which were rightfully theirs.

70.    The Defendant's conduct deprives the Plaintiffs of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

71.    The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

72.     Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 4 - DEPRIVATION OF CIVIL RIGHTS
## VIOLATIONS OF THE TAKINGS CLAUSE
## 42 U.S.C. SEC. 1983

73.     Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

74.     The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

75.     The Fifth Amendment provides in relevant part "nor shall private property be taken for public use, without just compensation."

76.     The Defendant's challenged conduct caused, under color of law, the illegal seizure without just compensation of the Plaintiffs' security interests in their real estate, which the Plaintiffs possessed prior to the issuance of Executive Order 7 X.

77.     These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, and Article I, Section 8 of the Connecticut Constitution.

78.     The Defendant's Executive Order 7X's taking of Plaintiffs' property is for a public purpose, as the taking is one the Defendant claimed is needed to protect Connecticut's public health, safety, and welfare.

15

79.     The Defendant has placed the cost of his Orders benefitting the public on the shoulders of private landlords, including the Plaintiffs, and has failed to offer just compensation for these takings.

80.     The Defendant's Executive Orders jeopardize the sustainability of the Plaintiffs' financial viability and in turn their rights to property ownership and possession.

81.     The U.S. and Connecticut Takings Clauses require the government to pay just compensation for any such taking.

82.     The Takings Clauses apply to temporary as well as permanent interference with private use of property.

83.     As a result of the Defendant's Executive Orders, Plaintiffs, and those similarly situated, have at least temporarily lost all economically beneficial use of their real and personal property.

84.     By this conduct, the Defendant is causing economic harm to all Plaintiffs without just compensation and an unlawful taking without compensation.

85.     The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

86.     The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

87.     Without an order for temporary injunctive relief, pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable harm.

## COUNT 5 – UNLAWFUL RESTRAINT OF INTERSTATE COMMERCE IN VIOLATION OF ARTICLE I, SECTION 8, CLAUSE 3

88.     The Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

89.     Pursuant to Article I, Section 8, Clause 3 of the Constitution (the "Commerce Clause"), only Congress has the authority to regulate interstate trade and international commerce.

90.     The Plaintiffs have many tenants who came from out-of-state to lease apartments owned by the Plaintiffs, many of whom attend university in Connecticut.

91.     Many of these tenants entered into contractual arrangements with the Plaintiffs by way of telephonic and/or internet communications, which were initiated and/or took place extraterritorially.

92.     In addition, the Plaintiff BENCHMARK TRADING, LTD leases apartments to foreign college students from Saudi Arabia, who travel from abroad to attend university in Connecticut, and whose communications with the Plaintiff BENCHMARK TRADING, LTD regarding entering into leasehold arrangements were by telephonic and/or internet communications which were initiated or took place extraterritorially, and for whom payments were made through foreign accounts.

93.     The communications between the Plaintiffs and any tenants from other states and/or countries occurred across state lines and/or international borders..

94.     The Plaintiffs' leases with any tenants from other states or countries, and the communications, discussions and/or negotiations precipitating such leases constitute interstate and/or international trade over which the Defendant has no regulatory or supervisory authority of any kind.

95.     The Defendant's Executive Orders as set forth hereinabove had the effect of regulating and curtailing interstate and international commerce in violation of Article I, Section 8, Clause 1 of the U.S. Constitution.

## COUNT 6 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

96.     The Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

97.     By engaging in the foregoing conduct, the Defendant has interfered in the contractual relationships between Plaintiffs and their tenants.

98.     As a foreseeable consequence of the Defendant's interference with these relationships, the Defendant has interfered with relationships between the Plaintiffs and third-parties, such as banks, lenders, and management companies, whose contractual relationships with the Plaintiffs have been negatively affected by the Defendant's *de facto* facilitation of tenants' failure and/or refusal to pay rent.

99.   By engaging in the foregoing acts and conduct, the Defendant has interfered with the Plaintiffs' contractual and business relationships with their tenants and with third-party beneficiaries.

100.   The Plaintiffs have been harmed by the Defendant's conduct and actions.

## COUNT 7 – ULTRA-VIRES ACT

101.   Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

102.   "No State shall pass any . . . Law impairing the Obligation of Contracts . . . ." Constitution of the United States, Art. I, s 10, cl. 1.

103.   The Connecticut Constitution guarantees the right to be able to access Connecticut's courts: "All courts shall be open, and every person, for an injury done to him in his person, property Of reputation, shall have remedy by due course of law, and fight and justice administered without sale, denial or delay." Connecticut Constitution, Art. First, Section 10.

104.   The Defendant in his capacity as Governor for the State of Connecticut is not empowered by the U.S. Constitution, the Connecticut Constitution, Connecticut Statute, nor by the common law to violate the constitutional rights of the citizens of Connecticut.

105.   The Defendant issued the portions of Executive Order 7G challenged here without any legal authority granted to him by the citizens of Connecticut, the

Connecticut Legislature, or by virtue of his holding the title of Governor for the State of Connecticut.

106.   The Defendant issued the portions of Executive Order 7X challenged here without any legal authority granted to him by the citizens of Connecticut, the Connecticut Legislature, or by virtue of his holding the title of Governor for the State of Connecticut.

107.   The Defendant did not, and does not, have the legal authority to halt the legal process of evictions.

108.   The Defendant did not, and does, not have the legal authority to interfere with private contracts between landlords and tenants.

109.   The Defendant's conduct challenged here is outside of the scope of his authority as Governor, and beyond the statutory limitations of his powers and authorities as Governor.

110.   The Defendant's conduct and the resulting Executive Orders challenged here are *ultra vires* and therefore null and void.

111.   For the *ultra-virus* conduct challenged here, the Defendant is sued in his individual capacity.

112.   The Plaintiffs have been damaged and continue to be damaged by the Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand the following relief:

1.    A trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38;

2.    Compensatory damages as will be proven at trial;

3.    Punitive damages under 42 U.S.C. § 1983;

4.    Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988;

5.    A declaratory judgment that the provisions of Executive Order 7X affecting the relationship between landlords and tenants violate the fights of Equal Protection guaranteed to the Plaintiffs;

6.    A declaratory judgment that the provisions of Executive Order 7X affecting the relationship between landlords and tenants violate the private fight to contract guaranteed to the Plaintiffs;

7.    A declaratory judgment that the provisions of Executive Order 7G and 7X affecting the relationship between landlords and tenants violate the due process rights guaranteed to the Plaintiffs;

8.    A declaratory judgment that the provisions of Executive Order 7 X affecting the relationship between landlords and tenants violate the rights against taking of property without just compensation guaranteed to the Plaintiffs;

9.    A declaratory judgment decreeing that the provisions of Executive Order 7G and 7 X affecting the relationship between landlords and tenants was outside the scope and authority of the Governor of the State of Connecticut, and thus any such provisions are ultra vires and null and void;

10.    A preliminary and permanent injunction prohibiting the Defendant and each of his employees, officers, agents, representatives, and those acting in concert or participation with him, from taking any action to enforce Executive Order 7X or to sanction, charge, punish or penalize any Landlord for failing or refusing to follow or abide by such Executive Order.

11.    A preliminary and permanent injunction requiring the Defendant to issue Executive Orders which modify Executive Order 7 G so as to provide the Plaintiffs and those like them a process under which to issue Notices to Quit, to initiate and pursue summary process eviction actions, and to proceed with execution of eviction judgments.

12.    A preliminary and permanent injunction requiring the Defendant to issue Executive Orders which repeal those portions of Executive Order 7 G and 7X that are outside the scope of the legal authority of the Defendant as Governor of Connecticut.

13.    Reimbursement for all lost rental income and security deposits lost as a consequence of the Defendant's Executive Orders.

14.    Any and all other and further legal and equitable relief, including injunctive relief, against the Defendant as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

DATED JULY 29, 2020.

RESPECTFULLY SUBMITTED
THE PLAINTIFFS


_____/S/ (Juda J. Epstein)_____ _____
Juda J. Epstein
Law Offices of Juda J. Epstein
3543 Main Street, 2nd Floor
Bridgeport, CT 06606
Tel: (203) 37l-7007; Fax: (203) 371-6001
Email: lawofficesjie@aol.com
Fed. Bar No. CT08704


Matthew M. Hausman
The Law Offices of Matthew M. Hausman, LLC
799 Silver Lane
Trumbull, CT 06611
Tel: (203) 375-6200; Fax: (203) 375-5003
Email: mhausmanlaw@msn.com
Fed. Bar No. CT08966

# EXHIBIT A

# Ned Lamont

GOVERNOR
STATE OF CONNECTICUT

March 10, 2020

The Honorable Denise Merrill
Secretary of the State
State Capitol Hartford, CT 06106

Frederick J. Jortner
Clerk of the State House of Representatives
State Capitol
Hartford, CT 06016

Michael Jefferson
Clerk of the State Senate
State Capitol
Hartford, CT 06016

**RE:  Declaration of Public Health and Civil Preparedness Emergencies**

Dear Secretary Merrill and Clerks of the General Assembly:

In response to the global pandemic of COVID 19 disease associated with a novel coronavirus
that is currently affecting multiple countries and states and has resulted in the spread of
infections in Connecticut and surrounding states, as well as resulting shortages of personal
protective equipment and other supplies that could jeopardize public safety and civil
preparedness, and in order to provide me and other appropriate officials with all authorities
necessary to limit the spread of the COVID 19 coronavirus and protect public safety within the
State of Connecticut, I hereby declare a public health emergency and civil preparedness
emergency throughout the State, pursuant to Sections 19a-131a and 28-9 of the Connecticut
General Statutes. Such public health emergency and civil preparedness emergency shall remain
in effect through September 9th, 2020, unless terminated earlier by me.

Specifically, in accordance with Connecticut General Statutes Section 19a-131a (f), I hereby
authorize and direct the Commissioner of Public Health to delegate the powers regarding
isolation or quarantine to municipal and district directors of public health. Municipalities, local

210 CAPITOL AVENUE, HARTFORD, CONNECTICUT 06106
TEL (860) 566-4840 • www.governor.ct.gov
Governor.Lamont@ct.gov

health officials, and local education officials are directed to follow previously issued guidance and apply relevant principles of risk management to decisions about whether to cancel, modify, or postpone large gatherings, public events, or travel.

Orders regarding additional measures to protect public health and safety, including suspension or modification of specific statutes, will follow as I determine to be necessary.

I am filing this declaration with you under my hand and seal on this 10th day of March 2020.

N Lamont

Ned Lamont
Governor

2:25 p.m.
TIME

# EXHIBIT B

STATE OF CONNECTICUT

BY HIS EXCELLENCY

NED LAMONT

EXECUTIVE ORDER NO. 7G

# PROTECTION OF PUBLIC HEALTH AND SAFETY DURING COVID-19 PANDEMIC AND RESPONSE – PRESIDENTIAL PRIMARY POSTPONEMENT AND ADDITIONAL PUBLIC HEALTH MEASURES

**WHEREAS,** on March 10, 2020, I issued declarations of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the State of Connecticut as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed spread in Connecticut; and

**WHEREAS,** my Executive Order No. 7, dated March 12, 2020, among other things, prohibited gatherings of 250 people or more for social and recreational activities, including but not limited to, community, civic, leisure, and sporting events; parades; concerts; festivals; movie screenings; plays or performances; conventions; and similar activities, and suspended various statutes and regulations to protect public health and safety; and

**WHEREAS,** my Executive Order No. 7A, dated March 13, 2020, authorized the Commissioner of Public Health to restrict entrance into nursing homes and similar facilities to protect people who are most vulnerable to COVID-19; and

**WHEREAS,** my Executive Order No. 7B, dated March 14, 2020, among other things, modified in-person open meetings requirements, waived certain rules to mitigate the critical shortage of hand sanitizer and personal protective equipment (PPE), maintain and increase the availability of childcare, and provide for increased healthcare resources and facilities; and

**WHEREAS,** my Executive Order No. 7C, dated March 15, 2020, among other things, cancelled classes in public schools for at least two weeks, provided for closure and remote conduct of business at Department of Motor Vehicle branches, extended deadlines for municipal budget preparations, and suspended or modified laws and regulations governing health care data and visitation at certain health care and congregate care settings; and

**WHEREAS,** my Executive Order No. 7D, dated March 16, 2020, restricted social and recreational gatherings of all types to fewer than 50 people, closed bars and restaurants to all service except food and non-alcoholic beverage takeout and delivery, closed gyms, fitness centers and movie theaters, and prohibited on-site operations at off-track betting facilities; and

**WHEREAS,** my Executive Order No. 7E, dated March 17, 2020, among other things, waived the requirement for an 180-day school year, suspended fingerprinting availability to that for critical requirements, extended the duration of various licenses and permits under the authority of the Commissioner of Emergency Services and public protection, and suspended certain requirements for recoupment of overpayment and hearings conducted by the Department of Social Services; and

**WHEREAS,** my Executive Order No. 7F, dated March 18, 2020, ordered the closure of Large Shopping Malls, the closure of places of public amusement except public parks and open recreation areas, expanded Medicaid telehealth coverage, waived in-person service, hearing, and screening requirements for certain Probate Court proceedings in vulnerable group care settings, and clarified my order cancelling school classes; and

**WHEREAS,** COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the World Health Organization has declared the COVID-19 outbreak a pandemic; and

**WHEREAS,** the risk of severe illness and death from COVID-19 appears to be higher for individuals who are 60 years of age or older and for those who have chronic health conditions; and

**WHEREAS,** to reduce spread of COVID-19, the United States Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommend implementation of community mitigation strategies to increase containment of the virus and to slow transmission of the virus, including cancellation of gatherings of fifty people or more and social distancing in smaller gatherings; and

**WHEREAS,** healthcare providers providing services to patients and those with Medical coverage, need flexibility in testing, diagnosis and treatment while supporting adequate social distancing measures, and to provide healthcare services during the course of the COVID-19 pandemic through the increased utilization of the delivery of health care or other health services through certain modes of telehealth service; and

**WHEREAS,** subsection (a)(11) of Section 19a-906 of the Connecticut General Statutes provides, in part, that "telehealth" does not include, in part, the use of audio-only telephone as a mode of delivering health care or health services via information and communication technologies to facilitate the diagnosis, consultation and treatment, education, care management and self-management of a patient's physical and mental health; and

**WHEREAS,** subsection (a)(12) of Section 19a-906 of the Connecticut General Statutes provides, in part, that a "telehealth provider" means health care providers specifically licensed pursuant to the Connecticut General Statutes governing those health care professions; and

**WHEREAS,** subsection (f) of Section 19a-906 provides, in part, that the provision of telehealth services and health records maintained and disclosed as part of a telehealth interaction shall comply with the provisions of the Health Insurance Portability and Accountability Act of 1996 P.L. 104-191, as amended from time to time; and

**WHEREAS,** an in-person visit to investigate a report that an elderly person allegedly is being, or has been, abused, neglected exploited or abandoned, or is in need of protective services, is likely to increase the risk of transmission of COVID-19; and

**WHEREAS,** if COVID-10 is transmitted to an elderly person, there is a high risk of serious illness or mortality; and

**WHEREAS,** the Department of Social Services ("DSS") can fulfill its statutory obligation to investigate such reports without making an in-person visit of the elderly person by using alternative means of communication; and

**WHEREAS,** DSS staff may be reduced as a result of illness or the need to self-isolate due to COVID-19, and may need additional time to disclose the results of its investigation of such reports; and

**WHEREAS,** attendance at public proceedings is likely to increase the risk of transmission of COVID-19; and

**WHEREAS,** in consultation with the Chief Court Administrator on behalf of the Chief Justice of the Supreme Court and the Judicial Branch, I have determined that there exists a compelling state interest that courts conduct only essential business in order to minimize the spread of COVID-19; and

**WHEREAS,** there is a compelling interest in reducing the risk of transmission of COVID-19 among voters, poll workers, and residents, which risk would be heightened in the settings of indoor polling places and potential lines for voting, especially in polling places such as senior centers, schools, community centers, and other public facilities;

**NOW, THEREFORE, I, NED LAMONT,** Governor of the State of Connecticut, by virtue of the authority vested in me by the Constitution and the laws of the State of Connecticut, do hereby **ORDER AND DIRECT:**

1. **Postponement of Presidential Primary to June 2.** Under my sole authority pursuant to the declaration of public health and civil preparedness emergency, and to protect the health and safety of voters, poll workers, and the most vulnerable members of our population, I hereby modify Section 9-464 of the Connecticut General Statutes to provide that on June 2, 2020 each party shall conduct a primary in each town if the names of two or more candidates for President of the United States are to be placed on such party's ballot in accordance with the provisions of chapter 154 of the General Statutes.

2. **Suspension of Non-Critical Court Operations and Associated Requirements.** Notwithstanding any provision of the Connecticut General Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or

other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:

    a.  All time limitations in Chapters 959, 959a, 960 and 961 of the General Statutes including, but not limited to, C.G.S. § 54-1g concerning the time of arraignments

    b.  and C.G.S. § 54-82m concerning the right to a speedy trial;

    c.  All time limitations for rendering judgments in civil actions provided in C.G.S. § 51-183b;

    d.  All time limitations concerning civil process, service and return provided in Chapter 896 of the General Statutes;

    e.  All statutes of limitations provided in Chapter 926 of the General Statutes;

    f.  All time limitations concerning the automatic review of terms of probation provided in C.G.S. § 53a-29(g);

    g.  All time constraints for the filing of administrative appeals provided in C.G.S. § 4-183;

    h.  All time limitations concerning hearings and rulings pertaining to primary and election disputes provided in Chapter 149 of the General Statutes;

    i.  All time limitations in Title 46b of the General Statutes including, but not limited to, family, juvenile and child support matters;

    j.  All venue and filing requirements including, but not limited to, C.G.S. §§ 51-345, 51-348, 51-352 and 51-353, provided in Chapter 890 of the General Statutes;

    k.  The times and places for the sitting of the Superior Court provided in C.G.S. § 51-181;

    l.  The notice of sessions provided in C.G.S. § 51-182;

3.  **Further Clarification of Limits on Restaurants, Bars and Private Clubs.** Effective at 12:00 p.m. on March 20, 2020, Executive Order 7D, which, among other things, restricted sales of alcoholic beverages by certain licensees, is modified as follows: Any business with an active restaurant, café or tavern liquor permit issued by the Department of Consumer Protection shall be permitted to sell sealed containers of alcoholic liquor for pick up at such restaurant, café or tavern under the following conditions: (i) the sale shall accompany a pick-up order of food prepared on the premises; (ii) the type of alcoholic liquor sold for off-premise consumption shall be the same as what the permit type would have permitted for on-premise consumption prior to Executive Order 7D, and (iii) the hours of such sales that include alcoholic liquor as part of the take-out order shall be the same as those for a package store.

Delivery of alcoholic liquor by licensees with these permit types is not permitted. In addition:

    a. Any business whose liquor permit allows for the manufacture of alcoholic liquor, in addition to sales for on-premise and off-premise consumption, shall be permitted to sell sealed bottles of alcoholic liquor for off-premise consumption in a manner consistent with their manufacturer permit. Delivery of alcoholic liquor by these permit types is not permitted.

    b. The Commissioner of Consumer Protection may issue any implementing orders and guidance that she deems necessary to implement this order.

4. **Restriction on Operation of Barbershops, Hair Salons, Tattoo or Piercing Parlors and Related Public Businesses.** Throughout the State, effective at 8:00 p.m. on March 20, 2020, the rendering of services by barbers, hairdressers and cosmeticians, nail technicians, electrologists, estheticians, eyelash technicians, and tattoo and piercing providers is prohibited in all public settings including, but not limited to, barbershops, beauty shops, hairdressing salons, nail salons, spas, kiosks, and tattoo or piercing establishments. The Commissioner of Public Health may issue any order she deems necessary to implement or modify such prohibition without further order from me.

5. **Flexibility for Medicaid Enrolled Providers and In-Network Providers for Commercial Fully Insured Health Insurance to Perform Telehealth Through Additional Methods.** The provisions of Section 19a-906 of the Connecticut General Statutes and any associated regulations, rules and policies regarding the delivery of telehealth are modified or suspended as follows:

    a. Subsection (a)(11)'s definition of "telehealth" is modified such that for telehealth providers that are Medicaid enrolled providers providing covered telehealth services to established patients who are Medicaid recipients, or telehealth providers that are in-network providers for commercial fully insured health insurance providing covered telehealth services to patients with whom there is an existing provider-patient relationship, these providers may engage in telehealth through the use of audio-only telephone;

    b. Subsection (a)(12)'s requirements for the licensure, certification or registration of telehealth providers shall be suspended for such telehealth providers that are Medicaid enrolled providers or in-network providers for commercial fully insured health insurance providing telehealth services to patients, in accordance with any related orders issued by the Commissioner of Public Health pursuant to her established authority as a result of this declared public health and civil preparedness

emergency and in accordance with Sections 19a-131a, 19a-131j and 28-9.

c.  Subsection (f)'s requirements that the provision of telehealth services and health records maintained and disclosed as part of a telehealth interaction shall comply with the provisions of the Health Insurance Portability and Accountability Act of 1996 P.L. 104-191, as amended from time to time (HIPAA), is modified to permit telehealth providers that are Medicaid enrolled providers or in-network providers for commercial fully insured health insurance providing telehealth services to patients to utilize additional information and communication technologies consistent and in accordance with any direction, modification or revision of requirements for HIPAA compliance as related to telehealth remote communications as directed by the United States Department of Health and Human Services, Office of Civil Rights during the COVID-19 pandemic.

d.  Notwithstanding paragraphs a through c herein, a provider who elects to provide telehealth services for a patient who is not a Medicaid beneficiary or covered by a fully-insured commercial plan, may engage in "telehealth" services as defined in such paragraphs for such patient, provided that any provider engaging in telehealth services under this section must, prior to engaging in such services, determine whether a patient is covered by a health plan other than Medicaid or a fully-insured commercial plan, and whether such plan provides coverage for such telehealth services.  A provider who receives payment under such health plan shall not bill a patient for any additional charges beyond the reimbursement received under such health plan.  A provider who determines that payment is not available under another such health plan or who determines a patient is uninsured, shall accept as reimbursement for that service as payment in full, the amount that Medicare reimburses for such service, provided that if the provider determines that the patient is uninsured or otherwise unable to pay for such services, the provider shall offer financial assistance, if such provider is otherwise required to provide financial assistance under state or federal law.

e.  Any related regulatory requirement that such telehealth services be provided from a provider's licensed facility is hereby waived.

6.  **Temporary Suspension of In-Person Investigative Visits Regarding Reports of Elder Abuse.** Section 17b-452 is modified to provide the Commissioner of Social Services with authority to waive the required in-person visit to an elderly person in connection with investigation of a report of suspected abuse, neglect, exploitation or abandonment, or a need for protective

services, and, if possible and appropriate, use alternative means to conduct such in-person visit.

7. **Extension of Time for Disclosure of Investigation Results.** Section 17b-452 of the Connecticut General Statutes is modified to provide the Commissioner of Social Services with authority to extend by up to ninety (90) days the requirement that the Commissioner of Social Services, not later than forty-five (45) days after completing an investigation, disclose, in general terms, the result of the investigation to the person or persons who reported the suspected abuse, neglect, exploitation or abandonment or a need for protective services.

Unless otherwise specified herein, this order shall take effect immediately and shall remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified by me.

Dated at Hartford, Connecticut, this 19th day of March, 2020.

Ned Lamont
Governor

By His Excellency's Command

Denise W. Merrill
Secretary of the State

# EXHIBIT C

STATE OF CONNECTICUT

BY HIS EXCELLENCY

NED LAMONT

EXECUTIVE ORDER NO. 7X

PROTECTION OF PUBLIC HEALTH AND SAFETY DURING COVID-19 PANDEMIC AND RESPONSE – RENTER PROTECTIONS, EXTENDED CLASS CANCELLATION AND OTHER SAFETY MEASURES, EDUCATOR CERTIFICATION, FOOD TRUCKS FOR TRUCKERS

**WHEREAS,** on March 10, 2020, I issued a declaration of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the State of Connecticut as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed spread in Connecticut; and

**WHEREAS,** pursuant to such declaration, I have issued twenty-four (24) executive orders to suspend or modify statutes and to take other actions necessary to protect public health and safety and to mitigate the effects of the COVID-19 pandemic; and

**WHEREAS,** COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the World Health Organization has declared the COVID-19 outbreak a pandemic; and

**WHEREAS,** the risk of severe illness and death from COVID-19 appears to be higher for individuals who are 60 years of age or older and for those who have chronic health conditions; and

**WHEREAS,** to reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommend implementation of community mitigation strategies to increase containment of the virus and to slow transmission of the virus, including cancellation of gatherings of ten people or more and social distancing in smaller gatherings; and

**WHEREAS,** many residents of Connecticut are experiencing or will experience a significant loss of income as a result of business closures, reduced work hours or wages, or layoffs related to COVID- 19, all of which affect their ability to pay their rent, and thus leave them vulnerable to eviction and increased amounts owed in the form of

penalties, interest, and late fees, all of which cause potential risks to public health and safety; and

**WHEREAS,** significant federal financial assistance will become, but is not yet available to Connecticut residents and businesses; and

**WHEREAS,** the Coronavirus Aid, Relief, and Economic Security Act provides a temporary moratorium on eviction filings, a temporary foreclosure moratorium, and up to 360 days of loan payment forbearance for properties with a federally backed mortgage loan; and

**WHEREAS,** my Executive Order No. 7S made available deferment of certain municipal tax payments or reduced interest on unpaid amounts of such taxes, provided that landlords offer commensurate forbearance to their tenants; and

**WHEREAS,** minimizing evictions during this public health period is critical to controlling and reducing the spread of COVID-19 by allowing all residents to stay home or at their place of residence; and

**WHEREAS,** measures to limit in-person interaction, including the cancellation of school classes in Executive Order Nos. 7C and 7L, will be necessary for at least several weeks past April 30, 2020; and

**WHEREAS,** because in-person interactions in social, recreational, athletic, business and entertainment settings also continue to pose a risk of transmission of COVID-19, measures to limit such interactions must also be extended for several weeks; and

**WHEREAS,** candidates for Connecticut initial educator certificates currently enrolled in educator preparation programs must take state competency examinations to become certified but, as a result of the COVID-19 pandemic, national testing companies have closed, eliminating access to these educator licensure assessments; and

**WHEREAS,** commercial truckers are making a critical contribution to transporting food and essential supplies during this public health and civil preparedness emergency, and their access to prepared meals has been reduced along portions of Connecticut's interstate; and

**WHEREAS,** on April 3, 2020, the Federal Highway Administration (FHWA) issued Notice FHWA 05-20, suspending enforcement of its restrictions on sales within highway rights of way to allow the operation of commercial food trucks during the period of the Presidentially-declared COVID-19 emergency; and

**WHEREAS,** there is a compelling state interest to permit commercial food trucks meeting certain requirements approved by the Department of Transportation to operate in the State's highway right of way and to suspend certain restrictions that would otherwise prohibit such operations;

**NOW, THEREFORE, I, NED LAMONT,** Governor of the State of Connecticut, by virtue of the authority vested in me by the Constitution and the laws of the State of Connecticut, do hereby **ORDER AND DIRECT:**

1. **Protections for Residential Renters Impacted by COVID-19.** Effective immediately and for the duration of the public health and civil preparedness emergency declared on March 10, 2020 including any period of extension or renewal:

   a. **No Notice to Quit or Service of Summary Process Before July 1.** Section 47a-23 of the Connecticut General Statutes is modified to additionally provide, "(f) No landlord of a dwelling unit, and no such landlord's legal representative, attorney-at-law, or attorney-in-fact, shall, before July 1, 2020, deliver or cause to be delivered a notice to quit or serve or return a summary process action, for any reason set forth in this chapter or in sections 21-80 et seq. of the Connecticut General Statutes, except for serious nuisance as defined in section 47a-15 of the Connecticut General Statutes."

   b. **Automatic 60-Day Grace Period for April Rent.** Section 47a-15a of the Connecticut General Statutes is modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in April 2020 is unpaid when due and paid within sixty days thereafter, the tenant of a dwelling unit shall not be in default or violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant. As used in this section, 'tenant' includes a resident of a mobile manufactured home park, as defined in section 21-64, including a resident who owns his own home, and 'landlord' includes a 'licensee' and an 'owner' of a mobile manufactured home park, as defined in section 21-64."

   c. **60-Day Grace Period for May Rent, Upon Request.** Section 47a-15a of the Connecticut General Statutes is further modified to additionally provide, "Notwithstanding the provisions of this section, if rent due in May 2020 is unpaid when due and paid within sixty days thereafter by a tenant who, on or before the 9th day after such rent is due, notifies the landlord or landlord's representative in writing, including but not limited to in written electronic

communication, that the tenant needs to delay all or some payment of rent because he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, the tenant of a dwelling unit shall not be in default or violation of the rental agreement and the landlord of such unit may not deliver or cause to be delivered a notice to quit or serve or file a summary process action for nonpayment of such rent; impose late fees, interest, or penalties; report such rent as late to any credit bureau or tenant screening service; or otherwise retaliate against the tenant."

d. **Application of Additional Security Deposit to Rent, Upon Request.** Section 47a-21 is modified to additionally provide, "(m) Upon the written request of a tenant of a dwelling unit who is not enrolled in the security deposit guarantee program established by the Commissioner of Housing pursuant to Section 8-339 of the Connecticut General Statutes, who has paid a security deposit in an amount that exceeds one month's rent, and who provides written notice, including but not limited to in written electronic communication, that he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, a landlord of such unit shall withdraw an amount of said deposit equal to the amount in excess of one month's rent from an escrow account and apply it toward the rent due in April, May, or June 2020. Notwithstanding subsection (h) of this section, an escrow agent may withdraw funds from an escrow account to comply with such a request. The amount withdrawn by the escrow agent and applied toward the rent due shall no longer be considered an amount of the security deposit for any purpose, including but not limited to the calculation of interest, assignment to successor, and the payment of security deposit and interest at the termination of a tenancy. Notwithstanding subsection (b) of this section, no landlord who has complied with such a request may demand the security deposit be restored to an amount that exceeds one month's rent earlier than the later of the end of the public health and civil preparedness emergency declared on March 10, 2020, including any period of extension or renewal of such emergency, or the date the rental agreement is extended or renewed.

Except as expressly provided herein, nothing in this order shall relieve a tenant of liability for unpaid rent or of the obligation to comply with other terms of a rental agreement or statutory obligations pursuant to Connecticut law. Except as

expressly provided herein, nothing in this order shall relieve a landlord of the obligation to comply with a rental agreement or statutory obligations pursuant to Connecticut law.

2. **Continued Cancellation of School Classes Through May 20, 2020.** To promote and secure the safety and protection of children in schools related to the risks of COVID-19, cancellation of public-school classes as ordered in Section 1 of Executive Order No. 7C, and as modified by Section 1 of my Executive Order No. 7L, is continued through May 20, 2020, unless earlier extended, modified, or terminated by me. Private schools and other non-public schools are encouraged to follow the same schedule. Connecticut Unified School District 1, established pursuant to Section 18-99a of the Connecticut General Statutes, Unified School District 2, established pursuant to Section 17a-37, and Connecticut Department of Mental Health and Addiction Services inpatient facilities providing school classes or programs are exempt from this section, but shall take such measures as are necessary to protect the health and safety of students and staff.

3. **Extension of Closures, Distancing, and Safety Measures Through May 20, 2020.** The orders to prevent transmission of COVID-19 through appropriate distancing and other safety measures listed below are extended through May 20, 2020:

    a. Executive Order No. 7D, Section 2, imposing limits on restaurant, bar, and private club operations.
    b. Executive Order No. 7D, Section 3, closing on-site operations at off-track betting facilities.
    c. Executive Order No. 7D, Section 4, closing operations at gyms, sports, fitness, and recreation facilities and movie theaters.
    d. Executive Order No. 7F, Section 1, closing large shopping malls.
    e. Executive Order No. 7F, Section 2, closing places of public amusement.
    f. Executive Order No. 7H, Section 1, imposing safety and distancing measures for workplaces and non-essential businesses.
    g. Executive Order No. 7N, Section 1, prohibiting social and recreational gatherings of more than five (5) people.
    h. Executive Order No. 7N, Section 3, restricting retail operations.

4. **Modification or Deferral of Educator Certification Testing.** Section 10-145f of the Connecticut General Statutes and any associated regulations, rules, and policies are modified to authorize the Commissioner of Education to modify or temporarily defer any requirements regarding certification testing contained therein as he deems necessary to address the impact of

COVID-19 risks, and to issue any implementing order that he deems necessary.

5. **Permission to Operate Food Trucks at Rest Areas.** Notwithstanding any provision of the Connecticut General Statutes or any regulation, local rule or other provision of law, the Commissioner of Transportation is authorized to allow commercial food trucks to operate in the state's highway right of way until the termination of the FHWA Notice FHWA 05-20, dated 4/3/2020, or the termination of the public health and civil preparedness emergency in Connecticut, whichever is earlier. The Commissioner may issue any implementing orders he deems necessary to effectuate the purposes of this order.

Unless otherwise specified herein, this order shall take effect immediately and shall remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified or terminated by me.

Dated at Hartford, Connecticut, this 10th day of April, 2020.

Ned Lamont
Governor

By His Excellency's Command

Denise W. Merrill
Secretary of the State

# EXHIBIT D

STATE OF CONNECTICUT

BY HIS EXCELLENCY

NED LAMONT

EXECUTIVE ORDER NO. 7DDD

PROTECTION OF PUBLIC HEALTH AND SAFETY DURING COVID-19 PANDEMIC AND RESPONSE – EXTENSION OF EVICTION MORATORIUM AND ADMINISTRATIVE DEADLINES

**WHEREAS,** on March 10, 2020, I issued a declaration of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the State of Connecticut as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and Connecticut; and

**WHEREAS,** pursuant to such declaration, I have issued fifty-six (56) executive orders to suspend or modify statutes and to take other actions necessary to protect public health and safety and to mitigate the effects of the COVID-19 pandemic; and

**WHEREAS,** COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the World Health Organization has declared the COVID-19 outbreak a pandemic; and

**WHEREAS,** to reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention (CDC) and the Connecticut Department of Public Health (DPH) recommend implementation of community mitigation strategies to slow transmission of COVID-19, including cancellation of gatherings of ten people or more and social distancing in smaller gatherings; and

**WHEREAS,** the risk of severe illness and death from COVID-19 is higher for individuals who are 60 or older and for those who have chronic health conditions; and

**WHEREAS,** public health experts have determined that it is possible to transmit COVID-19 even before a person shows symptoms and through aerosol transmission; and

**WHEREAS,** public health experts have indicated that persons infected with COVID-19 may not show symptoms, and transmission or "shedding" of the coronavirus that causes COVID-19 may be most virulent before a person shows any symptoms; and

**WHEREAS,** the CDC has recommended that people with mild symptoms consistent with COVID-19 be assumed to be infected with the disease; and

**WHEREAS,** upon a proclamation that a public health or civil preparedness emergency exists, section 28-9(b) of the Connecticut General Statutes authorizes the modification or suspension in whole or in part by executive order of any statute or regulation or requirement or part thereof that conflicts with the efficient and expeditious execution of civil preparedness functions or the protection of public health; and

**WHEREAS,** minimizing evictions during the COVID-19 pandemic is critical to controlling and reducing the spread of COVID-19 and preventing a resurgence of the disease by allowing residents to stay home or at their place of residence; and

**WHEREAS,** in order to keep people safely in their homes and avoid increasing homelessness and the associated risk of COVID-19 transmission, Executive Order No. 7X, Section 1 provided temporary relief from statutory eviction proceedings; and

**WHEREAS,** continued economic disruption could increase homelessness and associated risk of COVID-19 transmission unless certain relief measures provided in Executive Order No. 7X are continued; and

**WHEREAS,** in order to further prevent the potential public health threat and spread of COVID19 to any person who might participate in the process of submitting, reviewing, hearing, discussing, deciding, or appealing an agency, board or commission decision, action, or related activity, and to allow for delays and unavailability caused by disruptions related to the COVID-19 pandemic, state agencies, boards, and commissions of this State require discretion to manage deadlines associated with Chapter 54 of the Connecticut General Statutes, the Uniform Administrative Procedure Act, and other statutory and regulatory deadlines relevant to conducting the business of this State; and

**WHEREAS,** Executive Order No. 7M provided such entities with discretion by granting authority to extend such deadlines; and

**WHEREAS,** having authority to further extend such deadlines will assist agencies, boards and commissions to protect the public health and prevent a resurgence of COVID-19 in the State by reducing in-person interactions;

**NOW, THEREFORE, I, NED LAMONT,** Governor of the State of Connecticut, by virtue of the authority vested in me by the Constitution and the laws of the State of Connecticut, do hereby **ORDER AND DIRECT:**

1. **Extended Protections for Residential Renters Affected by COVID-19.** In addition to the provisions in Executive Order No. 7X, Section 1, the following provisions shall take effect immediately:

   a. **No Notice to Quit or Service of Summary Process Before August 22.** Section 47a-23 of the Connecticut General Statutes is modified to additionally provide, "(g) No landlord of a dwelling unit, and no such

landlord's legal representative, attorney-at-law, or attorney-in-fact, shall, before August 22, 2020, deliver or cause to be delivered a notice to quit or serve or return a summary process action, for any reason set forth in this chapter or in sections 21-80 et seq. of the Connecticut General Statutes, except for nonpayment of rent due on or prior to February 29, 2020 or for serious nuisance as defined in section 47a-15 of the Connecticut General Statutes." All notices to quit for nonpayment of rent issued before August 22 shall specify and recite the period of nonpayment of rent prior to February 29, 2020 for which rent has not been paid.

a. **Extended Opportunity to Apply Additional Security Deposit to Rent, Upon Request.** Executive Order No. 7X, Section 1.d. is superseded by the following: Section 47a-21 is modified to additionally provide, "(m) Upon the written request of a tenant of a dwelling unit who is not enrolled in the security deposit guarantee program established by the Commissioner of Housing pursuant to Section 8-339 of the Connecticut General Statutes, who has paid a security deposit in an amount that exceeds one month's rent, and who provides written notice, including but not limited to in written electronic communication, that he or she has become fully or partially unemployed or otherwise sustained a significant loss in revenue or increase in expenses as a result of the COVID-19 pandemic, a landlord of such unit shall withdraw an amount of said deposit equal to the amount in excess of one month's rent from an escrow account and apply it toward the rent due in April, May, or June, July or August 2020. Notwithstanding subsection (h) of this section, an escrow agent may withdraw funds from an escrow account to comply with such a request. The amount withdrawn by the escrow agent and applied toward the rent due shall no longer be considered an amount of the security deposit for any purpose, including but not limited to the calculation of interest, assignment to successor, and the payment of security deposit and interest at the termination of a tenancy. Notwithstanding subsection (b) of this section, no landlord who has complied with such a request may demand the security deposit be restored to an amount that exceeds one month's rent earlier than the later of the end of the public health and civil preparedness emergency declared on March 10, 2020, including any period of extension or renewal of such emergency, or the date the rental agreement is extended or renewed.

Except as expressly provided herein, nothing in this order shall relieve a tenant of liability for unpaid rent or of the obligation to comply with other terms of a rental agreement or statutory obligations pursuant to Connecticut law. Except as expressly provided herein, nothing in this order shall relieve a landlord of the obligation to comply with a rental agreement or statutory obligations pursuant to Connecticut law.

2. **Authority to Extend Statutory and Regulatory Administrative Deadlines by an Additional 90 Days.** Notwithstanding any provision of the Connecticut General Statutes, any regulation, or other provision of law, I hereby authorize each department head, commissioner, agency head, and board and commission of this State to extend, as they deem reasonably necessary to respond to the COVID-19 pandemic or its effects, any statutory or regulatory time requirements, decision-making requirements, hearings, or other time limitations or deadlines, procedure or legal process pertaining to matters under their respective jurisdiction, functions or powers for 90 days provided such extension is granted prior to September 9, 2020. Such authority shall include the ability to further extend without lapse any deadlines extended pursuant to Executive Order No. 7M, Section 3 and which would have expired on or before June 28, 2020. Department heads, commissioners, agency heads, and boards and commissions may issue any orders necessary to implement and effectuate the purposes of this order and shall publicly post and maintain such orders on their respective websites.

Unless otherwise specified herein, this order shall take effect immediately and remain in effect for the duration of the public health and civil preparedness emergency, unless earlier modified, extended or terminated.

Dated at Hartford, Connecticut, this 29th day of June, 2020.

Ned Lamont
Governor

By His Excellency's Command

Denise W. Merrill
Secretary of the State